2011 OK CIV APP 101

**HENRYETTA MEDICAL CENTER, Petitioner,**

v.

**Peggy L. ROBERTS, and the Workers' Compensation Court, Respondents.**

No. 107,634.

Court of Civil Appeals of Oklahoma,
Division No. 2.

July 7, 2010.

Approved for Publication by Order of the
Supreme Court Oct. 25, 2010.*

Richard L. Blanchard, Morrel Saffa Craige, P.C., Tulsa, Oklahoma, for Petitioner.

Richard A. Bell, Heather A. Lehman, The Bell Law Firm, Norman, Oklahoma, for Respondents.

JANE P. WISEMAN, Chief Judge.

¶ 1 Henryetta Medical Center (Employer) seeks review of an order of the Workers' Compensation Court awarding Peggy L. Roberts (Claimant) permanent partial disability (PPD) benefits. The issue on appeal is whether the trial court improperly considered functional loss when assessing Claimant's PPD. After review of the record and applicable law, we find the trial court did not err and sustain its decision.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 Claimant filed a Form 3 on March 20, 2008, in which she claimed depression and injury to her head, back, neck, and left shoulder as a result of a work-related injury occurring on December 16, 2007. Claimant stated she was injured when she slipped and fell as she was carrying boxes of trash to the dumpster. In its answer, Employer admitted injury to Claimant's lower back. Employer, however, claimed the incident was not the major cause of her depression or the injuries to her head, left shoulder, and neck.

¶ 3 At a hearing on the issue of PPD, Employer presented the report of Robert E. Paul, MD, MPH. Dr. Paul gave the opinion that Claimant "has 10% whole man impairment due to her lumbar spine problems," with 5% attributable to "[c]ompression frac-

* See 2010 OK 76, 242 P.3d 537 (2010).

ture, treated with excellent results" and the other 5% attributable to "[d]ecreased range of motion." Dr. Paul, however, went on to state, that "[o]f this 10% whole man impairment, I do feel as though 6% should be apportioned to her degenerative changes including old compression fracture (degenerative changes) and 4% apportioned to the aggravation of this old compression fracture (degenerative changes) by virtue of this on-the-job injury of 12–16–2007." Dr. Paul found no impairment to Claimant's head, cervical spine, and shoulders and no ratable condition as a result of depression.

¶ 4 In support of her claim for PPD benefits, Claimant presented the medical report of Kenneth R. Trinidad, D.O. After a review of Claimant's medical history and a physical examination, Dr. Trinidad concluded that Claimant as a result of the December 16, 2007, accident has a 19 percent permanent partial impairment (PPI) to the whole man due to injuries to her cervical spine, 36 percent PPI to the whole man from injuries to her lumbar spine, 32 percent PPI to her right shoulder, 32 percent PPI to her left shoulder, and 10 percent PPI "to the whole man from psychological overlay of depression."

¶ 5 Dr. Trinidad stated that when he evaluated Claimant for permanent impairment, he used the 5th edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment,* "except where scheduled members are considered." Dr. Trinidad indicated that "[r]ange of motion testing of the extremities was performed with a goniometer and range of motion testing of the spine was performed with an inclinometer, as prescribed in Chapter Fifteen of the AMA *Guides.*" Dr. Trinidad found the following impairments due to range of motion abnormalities: 13 percent to the cervical spine, 19 percent to the lumbar spine, 13 percent to the right shoulder, and 13 percent to the left shoulder.

¶ 6 The Workers' Compensation Court permitted Claimant to amend her original Form 3 to add her right shoulder as an additional injured body part. The court found Claimant suffered accidental personal injury to her neck, lumbar back, left shoulder, and right shoulder, and consequential psychological overlay, all of which arose out of and in the course of her employment with Employer. The court additionally found Claimant's employment with Employer was the major cause of the above-listed injuries. The court made the following findings as to PPD:

> THAT as a result of said injury [C]laimant sustained 5 percent permanent partial disability to the NECK (objective medical evidence/anatomical abnormality, spasm), 20 percent permanent partial disability to the LUMBAR BACK (objective medical evidence/anatomical abnormality, kyoplasty of L5) (over and above pre-existing 6% disability), 7 percent permanent partial disability to the LEFT SHOULDER (objective medical evidence/anatomical abnormality, injections), 9 percent permanent partial disability to the RIGHT SHOULDER (objective medical evidence/anatomical abnormality, injections) and two percent permanent partial disability due to PSYCHOLOGICAL OVERLAY/DEPRESSION, for which [C]laimant is entitled to compensation for 215 weeks at $233.41 per week, or the total amount of $50,183.15 of which 93 weeks have accrued and shall be paid in a lump sum of $21,707.13.

The court overruled Employer's objection to the admission of Dr. Trinidad's deposition, denied Claimant's request for continuing coverage for her prescription for Xanex, and ordered Employer to provide Claimant with medical maintenance with Dr. Scott Anthony.

¶ 7 Employer appeals.

### STANDARD OF REVIEW

¶ 8 Employer asserts that after amendments to the Workers' Compensation laws in 2005, functional loss is no longer an element of PPD. "Issues of statutory construction are questions of law which [an appellate court] reviews *de novo* and over which we exercise plenary, independent, and non-deferential authority." *White v. Lim,* 2009 OK 79, n. 5, 224 P.3d 679.

## ANALYSIS

¶ 9 On appeal, Employer claims that 85 O.S. § 3, as amended in 2005, no longer provides that a functional abnormality can be considered when assessing a claimant's permanent impairment. Before 2005, "permanent impairment" as defined in § 3 was "any anatomical or functional abnormality or loss after maximum medical improvement has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made." 85 O.S. Supp.2004 § 3(16). In 2005, the Legislature amended § 3 to define "permanent impairment" as "any anatomical abnormality after maximum medical improvement has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made." 85 O.S. Supp.2005 § 3(19).

¶ 10 Employer asserts the trial court erred in using functional loss in assessing Claimant's PPD. Employer claims that the deletion of the phrase "or functional abnormality or loss" by the Legislature indicated its intent to remove the functional abnormality or loss component from consideration when determining permanent impairment. As a result, Employer asserts, "a rating physician cannot consider a functional abnormality or loss when assessing a claimant's permanent impairment." We disagree.

■ ¶ 11 Although it is clear that the Legislature did remove the term "functional" from the definition of permanent impairment, it did not change the requirement that "[e]xcept as otherwise provided herein, any examining physician shall only evaluate impairment in accordance with the latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the injury." 85 O.S. Supp.2005 § 3(19). Subsection 3(19) further provides, in part, the following:

> The examining physician shall not deviate from said guides or any alternative thereto except as may be specifically provided for in the guides or modifications to the guides or except as may be specifically provided for in any alternative or modifications thereto, adopted by the Administrator of the Workers' Compensation Court as pro-

vided for in Section 201.1 of this title. These officially adopted guides or modifications thereto or alternative system or method of evaluating permanent impairment or modifications thereto shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member injury or loss; and impairment, including pain or loss of strength, may be awarded with respect to those injuries or areas of the body not specifically covered by said guides or alternative to said guides.

¶ 12 In evaluating impairment, the American Medical Association, *Guides to the Evaluation of Permanent Impairment* (AMA Press 5th ed. 2001), provides that functional loss is a component of rating permanent impairment. The *Guides* state the following:

> *Guides* considers both anatomic and functional loss. Some chapters place a greater emphasis on either anatomic or functional loss, depending upon common practice in that specialty. *Anatomic loss* refers to damage to the organ system or body structure, while *functional loss* refers to a change in function for the organ or body system. An example of an anatomic deviation is development of heart enlargement; functional loss includes a loss in ejection fraction or the ability of the heart to pump adequately. Anatomic loss receives greater emphasis in the musculoskeletal system, as in measurements such as range of motion. Functional considerations receive greater emphasis in the mental and behavioral section.

> The impairment criteria outlined in the *Guides* provide a standardized method for physicians to use to determine medical impairment. The impairment criteria include diagnostic criteria, incorporating anatomic and functional measures. The impairment criteria were developed from scientific evidence as cited and from consensus of chapter authors or of medical specialty societies.

*Id.* at 4.

¶ 13 Later on the *Guides* state that the "impairment ratings reflect the severity and

limitations of the organ/body system impairment and resulting **functional limitations.**" *Id.* at 9. The *Guides'* glossary defines functional limitations as "[t]he inability to completely perform a task due to an impairment. In some instances, functional limitations may be overcome through modifications in the individual's personal or environmental accommodations." *Id.* at 601.

¶ 14 Employer asserts that after the 2005 amendments to the Workers' Compensation Act, "a rating physician cannot consider a functional abnormality or loss when assessing a claimant's permanent impairment." We reject Employer's argument. The Legislature did not change the fact that a rating physician must rely on, and in fact may not deviate from, the *Guides* in evaluating impairment. The *Guides* clearly incorporate both anatomic and functional loss in evaluations for impairment. Therefore, functional abnormality and loss must still be considered when evaluating a claimant's impairment. Accordingly, we find the trial court did not err in considering functional abnormality or loss in awarding Claimant PPD benefits.

## CONCLUSION

¶ 15 We find that the Workers' Compensation Court did not err in considering functional loss when awarding PPD benefits to Claimant, and we sustain its decision.

¶ 16 **SUSTAINED.**

FISCHER, P.J., and BARNES, J., concur.